Good morning, Your Honors. I'm Todd Burns. Welcome back. As I hope all members of the panel are aware, the only live issues on this appeal relate to the restitution on the Rancho Santa Fe and the Palomar Mountain properties. And I want to start off by discussing an issue that's common to both of those, the restitution with respect to both of those properties, which is whether or not the 1957 offense is an offense against property. As I discussed in the opening brief, this is a strictly categorical analysis. It looks at the elements and the nature of the crime. It doesn't look in a specific case at the underlying facts that were admitted in a plea agreement or proven at trial. Judge Gonzalez didn't seem to disagree with that, although she didn't specifically engage the issue. She didn't, in ruling, she didn't look at the underlying facts that were admitted. And the government doesn't seem to dispute that there's a strict categorical analysis. But nevertheless, in its analysis, it plunges into the facts that were in the plea agreement, which, of course, we think is the incorrect approach. And the government discusses at length the comparison with the facts in Young, which is incorrect as well. Mr. Burns? Yes. Help me, because I've got some difficulty figuring out what this statute says, as I think everybody does. What's the effect of the final clause of the statute? Or including. Including. Or including. What does that mean? Are you referring to 1957 or to 36A? To the restitution statute, A1. 3663A1, which says this section shall apply in all sentencing proceedings, blah, blah, blah. And then it goes on to say that is an offense against property under this title, comma, or under something that doesn't apply, the Controlled Substances Act, comma, including any offense committed by fraud or deceit. What does that clause modify? What does it mean? Well, I think it's making clear that an offense against property can include an offense involving fraud and deceit. And so, you know, tying the. . . But if you're right that we take a strictly categorical approach, why is that clause needed? Well, I think it's needed because a court could read an offense against property as being strictly, you know, the types of offenses that have been given as examples in the two cases I cited, Aguirre, Aguirre, and McDowarty, strictly offenses where, you know, there's an attack against property, physical attack, explosives, ransacking a store, burning buses, that sorts of things. And I think what it's making clear is here it can also include when there's an offense that's being against an entity or person's interest in property. And so tying into, say, the argument that I made with respect to Lazarenko in 1956, if you conceal property with the intent to, say, evade taxes or reporting requirements, you are then, you know, potentially impinging on the government's interest in that property. So it's an offense against their interest in the property. Let me follow up then because I'm still not sure I can figure out what meaning this phrase has. If an offense against property is a categorical analysis and a crime fits within that categorical analysis, what difference does it make if it's committed by fraud or deceit? In other words, this seems to me to suggest something other than a categorical analysis, but I don't know what it suggests. I must tell you, I'm at sea figuring out what this clause means. But it can't mean that we just have a categorical analysis for the first clause because then it would be unnecessary. Well, I'm not at the risk of being redundant. I'm not sure that it would be unnecessary because it could be without that modifier, one could read an offense against property to just include, say, a physical attack against property, a destruction of property. And this is making clear that it includes fraud or deceit, so fraud or deceit which invades a party's interest in property rather than destroying the property, maybe stealing the property. Okay. So then this takes us back to the first question, which is what does the phrase offense against property mean? Well, I think it has to be, I've cited the examples that this Court has used in the past, and those are sort of physical attacks against property. It can't be limited to physical attacks. Yes. And if it modifies to include offense involving fraud and deceit, as I just said, it's an offense which could invade on a party's interest in property by defrauding them. But we said in Stevens, didn't we, that the right to receive child support payments is covered by this statute. Well, and I think that a person has a property interest in the right to receive child support payments. So that type of offense, or more obviously like a bank fraud offense, you are depriving an entity of its interest in property. That's an offense against property. But 1957 is a much more amorphous statute. It's just engaging in prohibited transactions. It doesn't – it's not a fraud statute necessarily. You know, in specific cases it can be. But again, it has to be a categorical analysis. And I think if it's not a categorical analysis, then you run into this awkward situation of, you know, Leocal makes clear that crime of violence, which is one of the qualifying types of offenses, absolutely is a categorical analysis. Leocal arises in a different context, though. Well, it does, but it's using crime – it's defining crime of violence with the statutory definition that's given. And even though in that statutory definition there's sort of this broad language about the nature of the offense, the Court says no, you look at the elements and the nature of the offense generically rather than looking at the specific offense conduct involved in the case. What if we read the word against as involving? Would you – would the crime in this case be covered? Well, that's the government's argument. That's what they finally boil it down to is this is offense involving property. I guess if you read it ultraliterally like that, and because this involves, you know, property that is derived from specified unlawful activity in an ultraliterally reading, yes, I guess it would be covered. Shifting gears to specifically the Rancho Santa Fe property and the restitution of J.P. Morgan Chase. J.P. Morgan Chase – there's no evidence that J.P. Morgan Chase was victimized. They lost any money at all. Just as a sort of a quick review of the facts, Washington Mutual made the initial loans in this case. Washington Mutual then went out of business, was seized and put into receivership by the FDIC. The FDIC then entered into a deal with J.P. Morgan Chase to take on, you know, the obligations to Washington Mutual's depositors in exchange for J.P. Morgan Chase getting a great deal of Washington Mutual's assets. Now, this wasn't a sale in the traditional sense where the board negotiates a sale and the shareholders are paid off. The shareholders are wiped out. They got nothing. Those were the owners. They got nothing. Now, it's not clear what J.P. Morgan Chase paid for this Rancho Santa Fe loan or even for the bulk of loans that it's categorized together. But what is clear is they made an undisclosed profit on this whole deal. So the best we know, J.P. Morgan Chase made money on this. They weren't a victim at all. But even if we looked at J.P. Morgan Chase's accounting for it, it put together a bundle of $120 billion in loans that it put these Rancho Santa Fe property loans into. It even, before buying those and as far as accounting for its losses and profits, discounted those from $120 billion to $90 million. So even in their accounting standards, they paid 75 cents on the dollar, yet they're paid full freight as if they made the initial loans. And the government says, well, that's fine because J.P. Morgan is a victim, is a subsequent purchaser of the loan. But, again, J.P. Morgan obviously didn't pay the full freight. These are savvy negotiators. Likely, really, they're paying pennies on the dollar, though they weren't willing to come in and say what they actually paid. They just gave us sort of a broad accounting standard based on $120 billion worth of loans. But the government's basically saying J.P. Morgan can be paid as if it made the initial loans. And that's obviously, under Young, wrong. Young says to calculate a victim's restitution award using the outstanding principal balance of the loan, if the victim only paid a fraction of that amount to obtain the loan in the secondary market, would cause the victim to receive an amount exceeding its actual losses and would constitute plain error. That's exactly what's going on here. And I must say, I'm sort of dumbfounded as to why the government would want to visit this windfall on J.P. Morgan Chase and at the expense of someone that, you know, probably taken the rest of his life to pay this off. I mean, Chase was able to buy the batch of mortgages at a discount price. I mean, they're still looking to make a profit on individual. Sure, but the question is the individual mortgages. But the Court's case law is clear. The question isn't maximizing Chase's profit. No, but Chase, there is a loss that's embedded in there, a potential loss in each one of these individual properties. Sure. And the most that Chase, based on its counting, would say that loss would be 25 percent, the most that they would say it was. But what they didn't come in is actually give us a breakdown of, you know, when we made this deal, this is how we valued these loans. Now, if you go and you look back at the press covers, they said, oh, J.P. Morgan Chase is picking these up at pennies on the dollar. They've made an undisclosed profit. Why is it undisclosed? Because, you know. In the end, though, they had to do each piece of property, you know, when the mortgage, when the buyer defaulted. Sure. And they could have come in and said, this is what the property, this is what we effectively paid for that loan, and this is what we got back on it. And they didn't do that. They said, we can't tell you what we paid for that loan. Even in either bulk or really what they need to do under Young is give some sort of estimation. You don't have to be exact, but give a justifiable explanation. Maybe there should be a remand for that purpose. Well, I think there should at least be a remand for that purpose. I don't think it possibly could be more than 75 cents on the dollar, which is how they accounted for it, although their accounting kind of changes over time, as the issue more states. Well, we shouldn't be making the, we shouldn't be, if you're right, we shouldn't be making that factual finding. We should be asking the district judge to make it. Right. And that's perfectly acceptable for me. It's just, I don't see why Chase should get this windfall. It makes no sense to me. I mean, from a big picture justice perspective, we're constantly hearing Chase committing fraud and being pursued by the Department of Justice. Why are they getting this windfall on the back of a single person? That's to the Santa Fe, right? Yes. Now, with respect to the city mortgage. That's what I'm trying to change here. What do you got to say about that? Well, you know, city mortgage, if you run through the facts, loans are made in May 2007. About a year later, there's a default in December 2008. There's appraisal in May of 2009 at $370,000. Then about a year after that, city mortgage sells its right to the property for $230,000. And then about a year after that, the party they sold it to, Saleem, sells the property for $270,000. So Saleem makes $40,000. City mortgage is at least undersold the value of the property by $40,000. And city mortgage says when it sold this property to Saleem, this interest in this property, it sold it as part of a bulk of $184 million. It had no view towards the value of the property. It was just selling all these loans off in bulk based on the principal that was owned. That's an intervening circumstance. Mr. Lewis has nothing to do with that. It's an intervening circumstance that obviously increased city mortgage's loss, too. Give me your best support directly that the district court is obligated to use the value of the Palomar property at the time. The city could have foreclosed instead of the amount recouped. Well, that's a little bit up in the air right now, as the court may know. I mean, in my book, this is an abuse of discretion decision. And frankly, the district court has certain law that it has to follow. And I hear your argument on the first property that it may not have followed exactly the law. But I'm trying to recoup what is the law, then, you want me to follow here? What is the case that says what the district court did is not legal? Well, there are several cases. And that it is, then, an abuse of discretion. There are several cases from this court, including Young, that say, look, you look at the value of the property at the time it comes back into the hands. Well, but, again, that's all very theoretical. And you've got a district court now who's separating out what we've got here and what we don't have here and trying to make a particular decision there, I guess. Well, I'd point out for the court's edification, if the members of the panel aren't aware, it's not just theoretical. There's a circuit split on the issue with at least the Seventh Circuit. And the Supreme Court heard argument on this issue on February 28th in a case called United States v. Robers. And one of the things that's interesting, if you listen to that argument, is the deputy solicitor general, in arguing for the Seventh Circuit's approach, his valuation, his kind of, you know, when the property's actually sold, what do they recoup? The justices are saying, well, what if they take a long time to sell the property and the property goes down in value? Why should the defendant be saddled with that? And one of the things the solicitor general says is, well, if there's a delay in selling the property, that's an intervening circumstance. It's an intervening circumstance that breaks, you know, the causation trail. And so the defendant shouldn't be on the hook for all that money. Well, here we have a break in the causation trail. We have the city deciding to sell the mortgage for, you know, reason having nothing to do with the value of the property and increasing its loss at least by $40,000. We know that because we know in a declining market that eight months later, Selene sold the property for $40,000 more. Well, that's a good argument made to one who makes the factual determination trying to determine between the two, it seems. Again, I'm back to the district court has a ‑‑ I have a standard of review over which I have to look at the district court. It seemed to me that in this particular situation, the district court directly applied Young's formula, and you're suggesting that was nonreplicable. And I'm trying to find the law that says it isn't, and I couldn't find it. Well, I ‑‑ my position on that would be the district court didn't correctly apply Young's formula because the district court just said all we have to do is look at how much city sold the loan, its loan interest for. And it didn't look at all ‑‑ well, there's an intervening circumstance here. You know, did city look at the valuation of the property? And, by the way, we know the valuation of the property is higher. Was there an argument about intervening circumstance? Did you just phrase it with the district court? Yes. Yes. I don't know that I phrased it exactly that way. But, sure, I made the argument. They sold the property eight months later for $40,000 more. Why should Mr. Lewis be funding Saleen's $40,000 profit based on city's decision that had nothing to do with the value of the property, but just with wanting to sell off $184 million worth of loans? Okay. Thank you for your time. May it please the Court, Larry Spohn of the United States. We do believe that this 1956 conspiracy involving 1957 transactions is a crime against property for purposes of mandatory restitution for several reasons. First of all, this Court has already held that it is such in Lazarenko. Well, that was rather plainly dictum, was it not? Well, I don't know that it was dictum. What it was was it said the parties, the parties, and then in parentheses, and we agree. So they agreed that it was. Now, I agree. It wasn't necessary to the decision. Judge Graper went on to say there's no identifiable victim in this case.  Correct. Okay. So assume it's dictum for a second. We're not bound by it. Tell me why you think that's the correct statement of the law. Okay, for several reasons. First of all, the other two circuits who've addressed this have found the same. That's the first, the Seventh Circuit. Second, the statute 1957 talks about transactions in criminally derived property. So it talks about property. And finally. Let me stop you for a second because this gets to the heart of my question here. I have no doubt this is an offense involving property. My question is what does the word against mean? Well, I would say it's the same as involving property. But even if it isn't, I think as the Court pointed out earlier, the only way to make sense of the other, the clause offenses, any offense involving fraud or deceit requires this Court to look beyond the name of the offense to what was involved. And in this case, there's no doubt the property involved here was meant for deceit, was to hide who the true owner of this property was and the true purchase of this property. No doubt in this case deceit was involved. But is it your view that the last clause of sub I.I. expands the other two categories? Absolutely. Because it says any offense involving fraud and deceit. Isn't it a strange way for Congress to expand the category by using the word including? In other words, normally if it wanted to just have any offense committed by fraud or deceit, it would have said or. Or and. Or and or sub. But it says including. That's language to me that seems to suggest that it's describing a subcategory, which is why I asked Mr. Burns if it were describing a subcategory, why was it needed? Well, I mean, I guess in some sense it must be describing a subcategory. But it talks about any offense. I'm assuming that means any of the previous offenses just listed. That was the only way I can make sense of that. And I agree with you. Which means a property offense. And so any property offense involving fraud or deceit. Yeah, but now you've taken the word against out of the first clause. And so I still have the same question I started with. You say against is the same as involving. That's certainly not the way we use that phrase in public discourse. Today, you're arguing against Mr. Burns. You're not arguing involving Mr. Burns. So why is it that I should read the word against? It could have said any property offense and it would have been easy. But it says against property. And this is an offense really against, you know, government order. The government doesn't want you to be able to use proceeds to launder money because it's a bad thing. But it's not – it's hard to see how the money laundering is against property. That's why I'm having some difficulty with it. Okay. Let me address that. Because that – see, that goes, I think, to some of the cases that say that the 1957, the victim is the government or society. But that's not always the case. And that's why we need this fraud or deceit. Because sometimes the victim is – there is an identifiable victim of the 1957 transaction. And this is one of those cases. Well, but here you're confusing the victim, which is defined broadly in the statute, with the categorical offense against property. In other words, it seems to me that if the first phrase is categorical, and you seem to agree in your briefs that it is, do you agree? Oh, absolutely not. That's why I don't agree it's categorical or I would not have argued so long about the facts. And one of the reasons I argue about that is because of this phrase, involving fraud or deceit. But there's nothing that says this has to be a categorical approach. I don't – I haven't found any case that says we look at this categorically. Or even if you look at it categorically, why can't we – okay, we'll decide – what is a crime against property? We can take a modified approach and look at the facts under that. I mean, there's nothing saying that we shouldn't do that. I would just – So this would be one of those cases that's circumstance-specific? Yes. Yes. Yes. I would argue – yes. I think this is one of those cases. And I think – What property – what crime is – what property is money laundering against in this case? How did the money laundering hurt – I understand how the rest of the conspiracy hurt the lenders. How did the money laundering hurt the vendors? It – The lenders. Well, it hurt them in that it disguised the true owner of the money, the true owner of the property. It disguised false income from the putative owner. All those transactions were used to disguise who the real owner was, the real purpose. And most importantly, what was behind the loan. There was literally nothing behind the loan. Those money transactions disguised that. And that's the harm against the property. Did they? Did they? Let's assume that Mr. Hester had bought these properties in his own name. And he had lots of money because he was a drug dealer. And he was laundering the money by doing this. It's not the money laundering that caused the bank's losses. It would be his – it would be the fraud at the front end about lying who the – lying about where his income came from or, in this case, lying about who the true purchasers were. How did the money laundering hurt the banks? Well, the money laundering hurt the banks because had they known the source of that money, they would not have made the loan. There was no income behind any of those things. There was no real money from the putative owner, Kelsey Weidenhofer or Mr. Hanson. They didn't have any money. So the transactions involved, that clearly hurt the bank. They would not have made those loans. Had Mr. Hester stepped up and said, that's my money, I have that much money in the bank, we'd be in a very different situation. But that's not the situation we're in. And I would just argue in this case, under the facts of this case, certainly the court was correct in finding that it was mandatory. Now, as to the Rancho Santa Fe and the J.P. Morgan chase, Mr. Burns has continued to confuse the purchase of a bank with a subsequent purchaser of a loan. J.C. Morgan was not the subsequent purchaser of a loan. They purchased the bank. The testimony from Mr. Carr was that the FDIC took control and simultaneously with taking control, sold the bank to J.P. Morgan. So J.P. Morgan stood in the shoes of Washington Mutual. They were the owner of the loan. Once that's the case, then the district court did exactly the right thing. Under Young, this says we take the value when the lender took control. And taking control does not mean when you can trigger foreclosure. Young specifically said that. So what was the value at the time of this particular property at the time, or this asset at the time they took control? They took control at the time of the sale, when they took title at the foreclosure sale. That's one or the other. That was the floor bid. That was the floor bid. So they stepped in in the shoes of Washington Mutual. Yes. So we don't care about the value of the property at that time? No, because they stand in the shoes, just like any business buying another business. If a bank buys another bank, they stand in their shoes. They just bought the loan. That's why this whole confusion about buying the bank and trying to determine the loan at that time, that was for accounting purposes. So after they took control, how long was it, how much time passed before they put it on, started foreclosure proceedings and sold the property? Oh, I, you know, I'm not sure. It was some months later. I was going to say it was about six months. Yeah. Yeah. So then when they sell it, what was the price again that they got at the mortgage sale? They put in a bid. They did the bid. They did. They put in a floor bid. And there was testimony about how the company, since they don't have control of the property, they can't go in and look at it, they do what's called an RMV evaluation. They did that. They made their floor bid slightly above that so they wouldn't lose money. The court said, and again, Young says the district court has a wide range, well, excuse me, a great deal of flexibility applying MVRA and doing the calculation. The court said that in the range of values, that's reasonable. That's what I'm going to use. So the court did that. And so the court determined the losses exactly as Young did. I would refer the court to the district court. Can we go back to the WAMU transaction for a second? Sure. You're characterizing it as an assignment, but as a formal matter, weren't the assets and liabilities of WAMU purchased? Yes, that's what you do. A company is its assets and liabilities. When you purchase the assets and liabilities, you purchase the company. I understand, but I'm not sure that when you purchase the assets and liabilities of a company, you stand in its shoes. What's happened is you've bought some things. You've bought the assets subject to the liabilities. Normally we think of an assignee standing in the shoes of the assigneur. Why doesn't that set a value on the assets that it bought? I would refer you to the testimony of Mr. Carr that this, when assets and liabilities, I mean, if I remember my basic business, a company is nothing more than its assets and liabilities. And that's the confusion Mr. Burns had trying to break that out somehow. The problem that you're not focusing on, which I think my colleague's question focuses on, this is not an assignment. This is not a situation where a bank just assigns. This is a situation where there was a purchase of assets with liabilities. There was no good faith involved in the purchase. They're down. So it was a purchase of assets and liabilities. So at that point in time, given it was that, why is it unreasonable in looking at Young not to suggest that the amount of the value in that purchase is what one should have used rather than the amount the seller paid for it? Well, if we look at the testimony of Mr. Carr, there was no way to determine that. They can't go through and look at through the file and go through and do some evaluation of each one. It seems pretty easy. If one buys the assets for a fourth less than one should have given on the books, that then the easiest would be to say that it's just a fourth less. So you shouldn't get as much for it. But when you purchase the entire bank, that doesn't tell us anything about the value of any one particular property. That's the problem here. By just writing it down, that's an accounting thing for them to account for the purchase of the entire bank. That's not an accounting transaction in the purchase. What we're doing is we're purchasing. If this were just an accountant's value that they put on the books, that would be one thing. But money went out and purchase was made. And these loans were purchased for less than they had on the books. And regardless of whether you want to say stepping in their own shoes or not, if there's no goodwill, there's either assets or liabilities and you get what you get. And that's why he's suggesting Young has not been appropriate. So let's address that. Is that really? I mean, how can we say it isn't appropriate? Because when you purchase an entire bank, it tells us nothing about the value of each of those individual properties. Simply to write it down across the board doesn't tell us anything about the value of those loans. And it doesn't tell us anything about the individual fraud that went into it. It would be a windfall to this defendant to do that. Let's go back to the WAMU transaction for just a second. So the FDIC stepped in, correct? Correct. Is that what happened? Yes. The FDIC, under its authority, stepped in and basically took over the bank. Took over the bank. And then FDIC sold the bank. Is that what happened? Yes. Simultaneous, as Mr. Carr testified, simultaneous with the FDIC taking control, it turned it over to Washington Mutual. Now, is there anything unique about the – about, you know, when the FDIC does that, does that accomplish what your argument, that there was just nothing more than Chase stepping into the shoes and the assignment kind of thing? Well, I think that's exactly what it tells us. Well, that isn't what happens when the FDIC takes over. When the FDIC takes over, they launder the assets to the bottom line and sell them out for as much as they can get. They don't step into the same shoes as. Well, they – I mean, really. No, I – when it comes to figuring out what happens with individual assets, yes, they do step into the same shoes. The FDIC steps into the shoes, but the FDIC is selling what they got, having stepped into the shoes, to a new owner to take them over and deal with. That's what happens when the FDIC comes in, isn't it? I mean, there is no way that the new owner even is subject to some of the same liabilities that were eliminated by the FDIC taking over. Well, all I can – I guess I don't know what to convince you other than look at the testimony of Mr. Carr and to see what he's describing as the purchase of the bank as opposed to the purchase of the loan. But I would argue that to allow a – that would be just the wrong approach in a case like this, because then it allows a windfall to the defendant who clearly was defrauding the bank here. We know what the values were at the time of the foreclosure sale. We know what the losses were as to this individual loan. And I would argue that just because the purchase – the whole purchase of the bank, I believe they do step into the shoes. If you disagree with me, then I don't – Just a minute. Why don't you address the other loan? Yes. The other loan, Young says we look at when you take control, that can only be at the foreclosure, either the proceeds or then it says other returns of property such as the sale of the loan. There you reduce that. That's what the Court did in this case, very clearly cited that. I think that was well within the Court's discretion. I think it followed the law in Young and applied the correct – the correct procedure. And the Court did consider that, looking at when they could have done it, but Young clearly says no, it's not when you could have foreclosed, it's when you did. Okay. Thank you. I'll give you a minute for one, because we're way over time here, so. The – you know, to boil down the J.P. Morgan Chase thing, this wasn't a sale. I mean, a sale is the shareholders get paid. The shareholders didn't get paid here. This was J.P. Morgan Chase coming in as a savvy negotiator. The FDIC, of course, wanting to cover the depositors as a primary point of interest for them so they don't have to pay the insurance and cutting this deal, dramatically reducing, of course, even by J.P. Morgan Chase's own estimation, the principal value at which they sold those loans. So to characterize it as just, oh, a sale, like a normal arm's-length transaction, that's just – that's just not accurate. And the agreement itself makes clear, by the way, that it wasn't a full-on sale. Can I ask you one quick question on the agreement? Does the agreement cover all assets and liabilities of WAMU or only selected assets and liabilities? The agreement, I believe, in an appendix explicitly excludes some of the assets and liabilities. Okay. Thank you. But finally, regarding the windfall, you know, I'll agree that someone was hurt here, and the people that were hurt were the shareholders. But the statute makes clear if you can't award restitution to all those thousands or hundreds of thousands of people, it's not awarded. It's not just given to J.P. Morgan Chase, who suffered no harm at all. Okay. Thank you. Thank you, Mr. Burns. The matter is submitted at this time.
judges: Paez, Smith, Hurwitz